SCHOTT, Judge.
On April 18,1972, plaintiff entered into a contract for engineering services to be provided to defendant in connection with the roads in St. Charles Parish. The contract called for the improvements of those roads “eligible for improvement” with “Royalty Road Funds” and by resolution in May the contract was authorized by the defendant, Police Jury, with the provision that “payment for the services shall be made from the Royalty Road Fund, or other funds that may be made available for that specific purpose.”
The work to be performed by plaintiff under the contract was in five phases. The first phase designated the “schematic design phase” required plaintiff to prepare a preliminary engineering study and report of the existing parish roads. In November, 1972, plaintiff presented its preliminary engineering report under the first phase of the contract and submitted invoices to defendant for this work on February 15,1973, in the amount of $37,514.80, the principal amount sued on.
At this point in time the Royalty Road Fund was administered by the State Department of Highways, pursuant to Art. 4, § 2, of the Constitution of 1921, and in September plaintiff’s invoices were sent by defendant to the Department for payment. In October, the Department returned the invoices “because the agreement or contract dated April 18,1972, did not receive approval of the Department prior to its execution.” The letter went on to state that the rates or fees charged by plaintiff were in excess of those normally made for this type of work.
In the meantime the Department and the Parish entered into an agreement in June, 1973, under which the Highway Department would take over the road project in the Parish and retain plaintiff as the engineer. In July a contract between plaintiff and the Highway Department was executed and provided the following scope of the project:
“The Project as covered by this contract shall consist of providing all necessary engineering and land surveying services required for developing plans for improving the various Parish roads described in the Engineers’ preliminary engineering report of November 27, 1972, which is made a part hereof by reference and, after the construction project has been placed under contract, the providing of resident administration and inspection of construction services in accordance with existing Departmental policies . . . ”
Phase I of the contract between plaintiff and the Highway Department involved the making of field surveys by plaintiff along with the design and preparation of plans for the road work to be done in the Parish. Phase II of the contract involved the actual construction phase of the work. The plans were put out for bids but these were found to be prohibitive and defendant rejected the bids because of a lack of funds. Defendant then proceeded to do the work on its own utilizing the information which had been developed along the way. In the meantime, with the advent of the Constitution of 1974, Art. 7, § 4(E), the Royalty Road Funds were transferred by the State to the Parish so that the defendant had unrestricted access to these funds and was able to pay for the work it was now doing on its own.
In response to the suit filed by plaintiff, defendant pleaded payment and contends that the work done by plaintiff for the State Highway Department for which it was paid in excess of $86,000 included the same work it had done under the contract with defendant. Defendant contends that plaintiff is making a “double billing,” i. e., attempting to be paid twice for the same work.
*62 In his reasons for judgment the trial judge stated that the contract provided that payments were to be made from the Royalty Road Funds, and after plaintiff performed its work the parties both found that the State, which had authority over the fund, would not honor the contract because it was not a party to it. He went on to say:
“Plaintiff, with the active support of the Police Jury President, Hooper, hastened to contract with the State for the selfsame services set out in the contract with the Police Jury. In fact this contract, entered into on July 10, 1973, described the Scope of the Project and made the preliminary engineering report of plaintiff a part of the contract. Plaintiff was well paid for the preliminary engineering report by the State to the tune of $86,-223.39.
The evidence does not substantiate plaintiff’s claim that the work performed for the jury under the 1972 contract was not the same work performed for the State under the 1973 contract. Plaintiff was well paid under the 1973 contract and now cannot collect for the same work from the defendant.”
We have concluded that the evidence of record does not support these findings. Plaintiff, as a matter of law, is entitled to recover the amount it claims.
In the first place plaintiff and defendant entered into a binding contract in which the plaintiff was obliged to deliver to defendant a preliminary plan and defendant agreed to pay a price for this plan. Plaintiff delivered exactly what was expected of it, but defendant took the position that the only funds available for payment would be from the Royalty Road Fund, and when the State, which had the authority to administer the fund, declined to release the payment defendant was under no obligation to pay the bill. In the first place, this argument overlooks the fact that the resolution of the Police Jury did not condition its obligation to pay on the availability of Royalty Road Funds but also obliged itself to pay out of any other funds that may be available. In the second place, Royalty Road Funds in fact did become available to defendant in 1974, so that even if such a condition had been originally placed on payment that condition was fulfilled and there was no longer an excuse for defendant’s nonpayment based on the Royalty Road Fund issue.
In the meantime plaintiff made a contract with another entity, the Highway Department, to perform certain work, and at the conclusion of that work it was paid in full by the Highway Department. We fail to see how this relieved defendant of its contractual obligation to pay the price to plaintiff for services and goods which the plaintiff delivered to defendant. When the preliminary plan was delivered by plaintiff to defendant the defendant’s obligation was fixed. It owed the price under the contract. Had plaintiff done nothing beyond the preliminary plan and had the Department paid the bill in defendant’s behalf perhaps the plea of payment would have some merit but the facts do not support that theory.
Without laboring the testimony of all the witnesses, plaintiff produced a representative of the Highway Department and two engineers employed by plaintiff. These witnesses unanimously testified that the preliminary plan, which is the subject of this suit, was not included in the work undertaken by plaintiff for the Highway Department for which plaintiff was paid in full. The preliminary plan was a general overall survey of the extent and condition of existing roads in the Parish, recommendations for the type and extent of improvements and repairs, and an estimate of the cost which would be incurred in the performance of such work. It contained maps of various parts of the Parish and the roads therein throughout the Parish. This plan enabled the Police Jury members to decide what priorities to assign and to make a division of benefits among the various wards of the Parish, based upon an objective study of the condition of the roads and an estimate of costs. The Police Jurors could thereby make an equitable distribution among their constituencies of whatever *63 funds were available to the Parish for road work.
It is obvious from reading the contract between plaintiff and defendant, and the one between plaintiff and the Highway Department, that the two contracts are entirely different. In the first place, the quoted portion of the scope of the project in the contract between plaintiff and the Highway Department clearly eliminates the suggestion that the Highway Department is paying for the preliminary engineering report. On the contrary, it recognizes that that report has already been made and the scope of this new contract is to develop those plans with the actual engineering and land surveying services as well as the actual construction of the project. The contract calls for the use of soil boring information, topographic surveys and the furnishing of prints which are suitable for use in the bid process. Even one who is not an expert engineer can look at the maps which are attached to the preliminary plan and readily conclude that these are not what was called for under the contract with the State. In any event, all the experts agreed on this with the lone exception of Harney Hooper, the president of the Police Jury at the time the case was tried.
The testimony of Mr. Hooper does not provide a basis for the trial judge’s conclusions. In the first place, he was not the president of the Police Jury when this contract was signed and apparently was opposed to the contract from the very beginning of his term of office. His testimony consists of vague opinions and assumptions which he drew from documents which he did not produce, and from statements and testimony of others about which he was allowed to testify over the objection of plaintiff. He repeated the “double billing” charge throughout his testimony but never demonstrated either in the contracts or in the testimony of those who had testified in plaintiff’s behalf exactly what work was billed to the Police Jury and was also billed to the State under the second contract. A reading of his testimony readily demonstrates that there was no substance to his charge of double billing, and the testimony of plaintiffs witnesses stood essentially un-contradicted.
We have concluded that plaintiff is entitled to a judgment for the principal amount sued on, and likewise find that plaintiff is entitled to interest and attorney’s fees as provided in § 8.2.2 of the contract as follows:
“Progress payments shall be made in proportion to services performed as indicated within the Agreement and shall be due within 30 days of the ENGINEER’S sub-mittal of his monthly invoice. Any amounts not paid within 30 days from date of presentation of the invoice shall commence to bear an interest charge at the then prevailing bank loan rates. If the amount is not paid and must be placed into the hands of a collector or attorney, additional charges will be due for the cost of collection, interest costs and reasonable attorney’s fee.”
There is no showing in the record as to the prevailing bank loan rate of interest at the time of the billing of February 15,1973, so that the legal rate of interest is applicable. Plaintiff incurred legal fees of $4,417.75 through the trial of the case in the trial court. In addition, plaintiff is entitled to a reasonable fee for services rendered in this court, which we assess at $1,000.
Accordingly, the judgment of the trial court is reversed and set aside and there is judgment in favor of plaintiff, DeLaureal Engineers, Inc., and against defendant, St. Charles Parish Police Jury, in the sum of $37,514.80, with legal interest from February 15, 1973, until paid, together with $5,417.75 for attorney’s fees and for all costs of these proceedings.
REVERSED AND RENDERED.